UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | 1:20-cr-00308-SJ-CLP-1 |
| Plaintiff, | ) | Brooklyn, NY |
| | ) | September 28, 2021 |
| vs. | ) | 11:06 AM |
| JEREMY TRAPP, | ) | |
| Defendant. | ) | |

TRANSCRIPT OF BOND MODIFICATION
BEFORE THE HONORABLE LOIS BLOOM
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

| | |
|---|---|
| For the Plaintiff: | SARA K. WINIK, AUSA<br>UNITED STATES ATTORNEY'S OFFICE<br>Eastern District of New York<br>271 Cadman Plaza East<br>Brooklyn, NY 11201 |
| For the Defendant: | ASHLEY MICHELLE BURRELL, ESQ.<br>LETICIA MARIA OLIVERA, ESQ.<br>VIVIANNE GUEVARA<br>THE FEDERAL DEFENDERS OF NEW YORK<br>One Pierrepont Plaza<br>16th Floor<br>Brooklyn, NY 11201 |
| Also Present: | MELISSA ROMAN<br>PRETRIAL SERVICES<br>225 Cadman Plaza East<br>2nd Floor, South Wing<br>Room 219<br>Brooklyn, NY 11201 |
| ECR OPERATOR: | NO NAME PROVIDED |



Rachel Wiley
eScribers
7227 North 16th Street
Phoenix, AZ 85020
www.escribers.net

Proceedings recorded by electronic sound recording; transcript produced by transcription service.



THE COURT: We (audio interference) for a bond modification in United States v. Jeremy Trapp, 20-CR-308.

Counsel, state your appearances, please, starting with the Government.

MS. SARA K. WINIK: Good morning, Your Honor. Sara Winik on behalf of the United States.

MS. LETICIA MARIA OLIVERA: Good morning, Your Honor. Leticia Olivera, Federal Defenders of New York. I'm joined by my colleague Ashley Burrell and Vivianne Guevara, a social worker with our office, and we are appearing today on behalf of Jeremy Trapp, who consents to appearing by telephone for today's purposes.

MS. MELISSA ROMAN: Good morning, Your Honor. Melissa Roman on behalf of Pretrial Services.

THE COURT: Thank you. Good morning, Ms. Winick, Ms. Olivera, Ms. Burrell, Ms. Guevara, Ms. Roman.

And good morning to you, Mr. Trapp.

This was put on for a bail modification. And as a background, I have been given the transcripts of the proceedings before Judge Gold, Judge Bulsara, and ultimately Judge Pollack, who put Mr. Trapp on to the conditions that I now believe that he's being asked to modify. Which that transcript is 37-3. And that proceeding was not that long ago. It's Exhibit C to the current motion. And it was May 17th, 2021.

So I've read all of those papers.

I've read your letter, Ms. Burrell and Ms. Olivera. So what is it that you want to state for the record?

MS. OLIVERA: Your Honor, Mr. Trapp has been out on bond now for eight and a half months. During that time he has participated in vocational programming. He has completed the first phase of the HOPE program, which is a job-training course. And now he is in the second phase of that program. At the same time he is undergoing weekly treatment at New York Forensics.

And we are requesting a curfew at this time, because through the whole program Mr. Trapp is often referred for job interviews, either entry-level and retail positions that are often scheduled at the last minute. As Your Honor is likely aware, for people on home detention the Pretrial Services office requires forty-eight hours' notice before someone can get permission to leave the house for an approved activity.

Mr. Trapp unfortunately has missed out on several job interviews over the past few weeks because these interview requests that he gets are normally the day before.

We are happy to report, though, that he did have a phone interview this morning with Citi Bike, and was offered a position as a bike technician.

But to give Your Honor an example of why a curfew is necessary, he's been scheduled for orientation already for

tomorrow morning. And it's an in-person orientation. So we can't guarantee for him right now that he would have permission to attend that orientation, because it doesn't fall within the window of notice that he has to give for Pretrial Services.

THE COURT: Thank you, Ms. Olivera.

Can I hear from Pretrial, please?

MS. ROMAN: Yes, Your Honor. Melissa Roman from Pretrial Services. We do have a requirement that schedules be requested at least forty-eight business hours in advance, simply because of the large volume of defendants that we have on location monitoring.

However, I would like to note that there has to my knowledge only been one appointment that the defendant was not given permission for. We have given him permission to attend these last-minute appointments. There has been, again to my knowledge, one that he was not given permission for. And I believe it was because it was sent to us on an afternoon, 3:30 in the afternoon for the next morning at 8 or 9 o'clock.

We have worked with Mr. Trapp. We've actually also given him permission despite the online -- the HOPE program was conducted online. We gave him permission to attend these in person in his attorney's office so that he wouldn't have to do this in his home on a daily basis.

So again, we are willing to work with Mr. Trapp. But yes, we do have that forty-eight hour advance notice, which we

have bent when it comes to the requests that he has given us.

THE COURT: Well, Ms. Roman, can I just ask you, we were just informed that he successfully interviewed and that he's being hired as a Citi Bike technician, and that there's an orientation tomorrow. Would it be problematic to keep him on home, I guess it's detention not incarceration -- I always get the two confused -- and give him permission, and know where he's going?

Because reading through every request up until this time, a number of things ring out to me. One, he's already been sentenced. And so even though he is entitled to the least restrictive bail requirements for him to come back to court -- I'm sorry, he has pled and now he's waiting to be sentenced. So we're in a different phase of the case. In addition, I saw -- and I appreciate how much the Federal Defenders office has worked with Mr. Trapp. I saw that you brought in Urban Justice Center. I see Ms. Guevara's been very involved in trying to get Mr. Trapp programs, mental health treatment, et cetera.

But I'm not really interested -- and I'm being quite honest, Ms. Olivera and Ms. Burrell -- I don't know anything about this Citi Bike technician job. I don't know whether he's going to be sent all over the city to fix bikes, or it's all going to be in one warehouse where all the bikes are brought to him. And the concerns that were expressed by Judge Gold, by

Judge Bulsara, by Judge Pollack are still my concerns. And again, with Judge Pollack, which was just in May, she stated, we will know because you'll have the GPS monitor, so Pretrial will know where you are at all times, and if you're not where you're supposed to be, I know I'm going to get that phone call, and that is going to be the end of it for you. That was what Judge Pollock said in her colloquy with Mr. Trapp. And I'm not inclined to not know where Mr. Trapp is. And you had --

MS. ROMAN: Your Honor --

THE COURT: -- said -- Ms. Burrell, you said, this isn't the free pass, and I think I've said this already so I won't reiterate it too many times, but basically we're just asking that he be placed on home detention. And again, that all activities would have to be preapproved by Pretrial. So again, I don't think Pretrial is against Mr. Trapp taking the job. And the Court --

MS. ROMAN: Yes.

THE COURT: -- certainly not against Mr. Trapp taking the job.

But what I don't want is for him to be able to roam at his liberty and us not to know where he is.

MS. ROMAN: Your Honor --

MS. ASHLEY MICHELLE BURRELL: Your Honor --

MS. ROMAN: -- if I could --

MS. BURRELL: -- this is Ashley Burrell --

MS. ROMAN: -- just -- I'm sorry. Ms. Burrell, go ahead.

MS. BURRELL: Okay. And you can talk then after.

Yeah, I would just note that Pretrial does not object to a curfew. He would still be on location and GPS monitoring. They would know exactly where he is at all times.

And when we made that first bail application, or the bail application in front of Judge Pollock it was from home detention, because when we spoke to Pretrial we asked if they would consider (audio interference) -- and I think Ms. Roman can confirm this -- but it's rare that a client goes from home incarceration to a curfew. There's steps that have to be taken. So standard, even though it's -- as Your Honor knows -- post, he is still -- once the Court determines, okay, this client's released, what are the least restrictive means. And I think based on his compliance since May attending this program, coming to our office to do the classes, going on job interviews, it still (audio interference) he always is where he's supposed to be. He gets home on time. He is in full compliance. He's attending therapy. And that he's proven to the Court that now the least restrictive means of release can be a curfew.

He just received this job offer today. And again, he won't be -- I think the same argument I made before -- it's not like he's going to be roaming around the city to do whatever.



THE COURT: Do you know --

MS. BURRELL: We have to know --

THE COURT: -- whether he --

MS. BURRELL: -- where he is.

THE COURT: Ms. Burrell, do you know whether the job is at a fixed site or whether he's going to be taken to different sites all over the city?

MS. BURRELL: I don't know right now, Your Honor, because he just got this job offer I think --

THE COURT: And how --

MS. BURRELL: -- this morning.

THE COURT: -- long is the orientation?

MS. BURRELL: Yeah. We literally just received an email confirming that he received the job offer. So we would have to call and find out all these specifics. So --

THE COURT: So Ms. Roman, my question is wouldn't it make sense for the Court to know where this job is? And hopefully that Mr. Trapp will hold on to this job longer than the one day that he was previously employed at a bagel store? Before I give him permission to be out on a curfew, why wouldn't that be information that the Court can be supplied?

MS. ROMAN: Your Honor, we are in agreement that it should be at a fixed location and that we have as much information as possible. We just received notification this morning, as Ms. Burrell stated about this job. So I don't know

if this job is going to be at a fixed location (audio interference) could travel.

I know from experience I did have one defendant prior to the pandemic who did work for Citi Bike. And this person did have to go to different locations. He was given I do not know if it was a roster or just given sites where he has to visit on any particular day to fix the bicycles. I don't know if that remains the case with Citi Bike or it's different for every employee.

THE COURT: So my question, Ms. Roman, wouldn't it make sense to get more information about the nature of this position that we can pre-approve today that even without the forty-hour hour notice if there's a Citi Bike orientation that he needs to attend tomorrow, we can give him permission to do that, right? And then get more information and report back to the Court.

Because again, I take Ms. Winik's papers seriously. Again, the paper that Ms. Winik put in, which is document 37, states that defendant hasn't offered a single reason that Chief Judge Pollock's May 17th order should be modified. That under home detention he has been able to engage in every single activity that he claims underscores his motion to downgrade his supervision. And then they go on to talk about the danger to the community, which I'm not going to get to at this point. I am happy that Mr. Trapp has successfully completed programs. I

am happy to hear that he has gotten an offer for employment. But right now, Ms. Olivera and Ms. Burrell, I don't see why I need to do anything until there's notice given about what the job will entail. And I do think if the job is going to require him to be all over and at different times, that may be different than if he was going to be at a fixed location. So these are things that I would imagine in the next week or so could be fleshed out.

MS. OLIVERA: Your Honor, this is Leticia Olivera. I just want to make a few points. First of all, I don't want my argument to be read as though we are asking for a modification to a curfew because of any shortcomings or anything Pretrial has not done. To the contrary, Pretrial has extended a number of resources. And I --

THE COURT: Oh, I get it. Ms. Olivera, I get it. And I saw that your last line was allowing Mr. Trapp to submit to a curfew will give him more flexibility in his efforts to make productive use of his time, it will also help conserve the resources of the Pretrial Services office. So I don't think that you are trying to in any way, shape, or form say that they have not lived up to their obligations. I get it.

However, you have used a lot of resources of the Court. This is now your fourth. I read that there was one before Judge Levy. I didn't get that transcript with the Government's opposition. But this is the fourth modification.

And as much as Mr. Trapp is entitled to zealous representation, and he's also entitled to try to make something positive happen here -- and I'm more than happy that he's getting a job -- I don't have the information I need to make a decision as to whether Pretrial should now put him on a curfew.

MS. OLIVERA: Well, Your Honor, pursuant to the Bail Reform Act, Mr. Trapp should only be subject to those conditions that are necessary --

THE COURT: Ms. Olivera, I read that. I get it. But again, you've now have four bail modification requests, the last in May before the chief magistrate judge who took his plea. Everything has been working out. So I don't really see right now why I need to modify it. He hasn't been denied to do anything. In fact, he's gotten a job. And he'll be allowed to attend the orientation. And that information can be conveyed to Pretrial. And perhaps the Government may consent to the modification, if they get all the information.

MS. OLIVERA: Your Honor, I'm not optimistic that the Government is going to consent to anything in terms of Mr. Trapp's bond. At every step of the way they have made the same argument (indiscernible) --

THE COURT: Ms. Olivera, you've heard from you today that I'm not prepared to grant this without information as to exactly what this new job will entail.

MS. OLIVERA: I understand, Your Honor. I'm just

trying to clarify that if Mr. Trapp having demonstrated that this close monitoring isn't necessary, that's was motivating our request to date.

THE COURT: Except on my end, having not been the judge on these prior proceedings, he's gotten the full consideration of the Court. He's pled guilty and is pending sentencing before the Honorable Sterling Johnson. So in my mind he's gotten all the process that he deserves, and he hasn't been held back from doing anything. And if Pretrial was coming to me saying it's really a problem, their resources are so stretched that they can't manage unless he goes on curfew, I would have a different feeling about this. That's not what's going on, Ms. Olivera. It's your office that's saying this will help Pretrial Services. They're not the one coming to the court and saying everything's going wonderfully with Mr. Trapp, let's go to curfew now. It's been your office that's making that call.

And again, I know that Mr. Trapp is getting zealous representation, and he's entitled to that. But I'm also entitled to take the conservative course here, which is to deny without prejudice the curfew only because I don't know anything about this new job. I will allow him to attend the orientation. All of the information should be given to Pretrial and to the Government. And if need be, you could make your new application.

MS. OLIVERA: Thank you, Your Honor.

THE COURT: Was there anything else that needed to be addressed on behalf of the United States today?

MS. WINIK: Not from the Government. Thank you, Your Honor.

THE COURT: And is there anything else that Pretrial wants to chime in with?

MS. ROMAN: Nothing at this time. Thank you, Your Honor.

THE COURT: And Mr. Trapp, I applaud that you're trying to get work and that you have been hired. And I wish you good luck in that job. And I imagine both your stepfather and your mother are on this call, because they are the ones that signed the bond. And I am not denying that there might be a way that your monitoring can be downgraded, but I'm waiting to hear what happens with Citi Bike. Do well at the orientation, sir. Get somebody to speak to Pretrial about what it's going to entail going forward. And I'm sure Ms. Olivera and Ms. Burrell will bring the application, if there needs to be an application, okay?

THE DEFENDANT: All right.

THE COURT: Good luck, Mr. Trapp, with the job. With that we are adjourned. Thank you.

(Proceedings concluded at 11:25 a.m.)

* * * * *

C E R T I F I C A T I O N

I, Rachel Wiley, court-approved transcriber, do hereby certify the foregoing is a true and correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

________________________________ October 8, 2021

Rachel Wiley DATE

eScribers, LLC
7227 North 16th Street
Phoenix, AZ 85020
www.escribers.net